GAIDRY, J.
|2The relator, a nursing home operator, applies for supervisory writs, based upon the district court’s overruling of its dilatory exception of prematurity. For the following reasons, we grant the writ, reverse the trial court’s judgment, and dismiss the respondent’s cause of action without prejudice on the grounds of prematurity.
FACTS AND PRIOR PROCEEDINGS
This is a wrongful death and survival action brought by Janice Hamilton (plaintiff), the surviving daughter of Nettie Win-field, a former resident of Baton Rouge Health Care Center (the Center), a nursing home in Baker, Louisiana. Ms. Win-field died on June 5, 2008, a few weeks following surgery for a right subtrochan-teric femur fracture. Plaintiff filed suit against the Center on September 30, 2008, alleging that her mother’s death was caused by the negligence of employees of the Center while “transferring her mother from her wheelchair to her bed and/or ... otherwise performing custodial duties” on an indeterminate date in May 2008.[1] She further alleged that the “negligent handling ... were [sic ] strictly custodial duties of the nursing home and were not related to any medical treatment of her mother.”
On November 20, 2008, the Center responded with a dilatory exception of prematurity, objecting to plaintiffs petition on the grounds that her claims were based on allegations of medical malpractice and therefore subject to mandatory review by a medical review panel prior to suit, pursuant to the Louisiana Medical Malpractice Act, La. R.S. 40:1299.41, et seq. (the MMA). The trial court heard the exception on March 30, 2009, and ruled against the Center, overruling the exception. On April 7, 2009, thejotrial court signed its judgment overruling the exception. Its written reasons for judgment were issued on April 22, 2009.
The Center applied to this court for supervisory writs, and a five-judge panel (with two judges dissenting) voted to deny writs on the showing made. Hamilton v. Baton Rouge Health Care, 09-CW-0849 (La.App. 1st Cir.12/11/09) (unpublished writ disposition). The Center then sought writs from the Louisiana Supreme Court. This matter now comes to us on remand from the Supreme Court, which granted the Center’s writ application and directed us on remand to render an opinion following briefing and argument. Hamilton v. Baton Rouge Health Care, 10-0061 (La.4/9/10), 31 So.3d 376.
DISCUSSION
The dilatory exception raising the objection of prematurity may be uti *333 lized in cases where the applicable law or contract has provided a procedure for a claimant to seek administrative relief or review before resorting to judicial action. Hidalgo v. Wilson Certified Express, Inc., 94-1322, p. 4 (La.App. 1st Cir.5/14/96), 676 So.2d 114, 116. The dilatory exception of prematurity is the proper procedural vehicle invoked by a qualified health care provider sued by a plaintiff who has not previously submitted a medical malpractice claim to a medical review panel, as required by La. R.S. 40:1299.47(B)(l)(a)(i). Spradlin v. Acadia-St. Landry Med. Found., 98-1977, p. 4 (La.2/29/00), 758 So.2d 116, 119. The burden of proving prematurity in such a case is on the exceptor, who must show that it is entitled to a medical review panel because the allegations fall within the MMA. LaCoste v. Pendleton Methodist Hosp., L.L.C., 07-0008, p. 6 (La.9/5/07), 966 So.2d 519, 528-24.
On the trial of the dilatory exception, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds ^thereof do not appear from the petition. La. C.C.P. art. 930. The only evidence introduced at the hearing in this matter was the Center’s certificate of enrollment as a qualified health care provider under the MMA; no substantive evidence relating to the plaintiffs claims was introduced by either party. Where no evidence is presented at the trial of a dilatory exception of prematurity, the court must render its decision on the exception based upon the facts as alleged in the petition, and all allegations therein must be accepted as true. LaCoste, 07-0008 at p. 8, 966 So.2d at 525, citing Blakely v. Powers, 590 So.2d 1286, 1290 (La.App. 1st Cir.1991). But the latter principle applies only to properly pleaded material allegations of fact, as opposed to allegations deficient in material detail, conclusory factual allegations, or allegations of law. Kirby v. Field, 04-1898, p. 6 (La.App. 1st Cir.9/23/05), 923 So.2d 131, 135, writ denied, 05-2467 (La.3/24/06), 925 So.2d 1230. This rule is a parallel to that employed in the determination of a peremptory exception of no cause of action, where only the “well-pleaded” allegations of fact are accepted as true. Id., 04-1898 at p. 6 n. 5, 923 So.2d at 135 n. 5. The adjective “well-pleaded” refers to properly pleaded allegations conforming to the system of fact pleading embodied in the Louisiana Code of Civil Procedure. Id.
A petition must set forth the material facts of the transaction or occurrence that is the subject matter of the litigation. La. C.C.P. art. 891. To plead “material facts,” the plaintiff must allege more than mixed questions of fact and law, such as, in a delictual action, that the defendant acted unreasonably. Price v. Kids World, 08-1815, p. 6 (La.App. 1st Cir.3/27/09), 9 So.3d 992, 996, writ not considered, 09-1340 (La.9/25/09), 18 So.3d 94. Rather, the Louisiana Code of Civil Procedure requires the plaintiff to state what act or omission he will establish at trial. Id. In other lBwords, the plaintiff must allege, with reasonable specificity, a state of facts or condition of things that would show fault under our tort law. See Fitzgerald v. Tucker, 98-2313, p. 7 (La.6/29/99), 737 So.2d 706, 713.
For our present purposes, the MMA defines “malpractice” as “any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient. ...” La. R.S. 40:1299.41(A)(8) [renumbered in 2008 as La. R.S. *334 40:1299.42(A)(13) ].[2] (Emphasis added.) The general definition of “tort” is “any breach of duty or any negligent act or omission proximately causing injury or damage to another.” La. R.S. 40:1299.41(A)(22). In the context of medical malpractice, such a breach of duty or negligence includes the failure “to use reasonable care and diligence, along with his best judgment, in the application of his skill.” Id. “Health care” includes “any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient’s medical care, treatment or confinement.” La. R.S. 40:1299.41(A)(9).
The Louisiana Supreme Court has adopted a six-factor test for determining whether alleged negligent conduct constitutes “malpractice,” as opposed to other fault. The factors to be considered include:
(1) whether the particular wrong is “treatment related” or caused by a dereliction of professional skill;
|fi(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;
(3) whether the pertinent act or omission involved assessment of the patient’s condition;
(4) whether [the] incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital [or other health care provider] is licensed to perform;
(5) whether the injury would have occurred if the patient had not sought treatment; and
(6) whether the tort alleged was intentional.
Coleman v. Deno, 01-1517, pp. 17-18 (La.1/25/02), 813 So.2d 303, 315-16.
In the absence of evidence relating to the nature of plaintiffs claims and the issue of prematurity, the following factual allegations of the petition must be accepted as true. Plaintiff alleged that her mother was “admitted as a resident” into the Center in 2001, with an “admission diagnosis ” that included “diabetes, hypertension and dementia.” (Emphasis added.) Following her admission, plaintiffs mother was “under the exclusive care, custody and control of [the Center],” “required total nursing care,” and “was restricted to wheelchair use.” (Emphasis added.)
Additionally, because Ms. Hamilton incorporated the following detailed factual allegations in her petition, it must be presumed that they are material to her cause of action and not mere surplusage, and them substance must be considered in characterizing the nature of the negligence attributed to the Center and its employees:
[W]hile visiting her mother at [the Center] on Mother’s Day, May 11, 2008, [plaintiff] detected a decrease in her mother’s mental status, her food intake was less than normal and she was less responsive. [Plaintiff] also noticed that her mother’s right leg was rotated inward and she complained of pain. The following day, [plaintiff] observed her *335 mother in the same condition and advised [the Center] of her concerns. [The Center] informed [plaintiff] that X-rays of her mothers [sic ] |7right hip and lower extremity had been taken and were negative.
[Plaintiff] continued to visit her mother daily and she continued her complaints of pain in her right hip. During each visit, [plaintiff] was reassured by [the Center] that her mother had no fracture of her lower extremity. On May 19, 2008, [plaintiff] had become increasingly concerned about her mothers [sic ] condition since it had not improved since Mother [sic ] Day. On this date, [plaintiff] noticed swelling in her mother’s right hip, her right leg was still rotated inward and she complained of severe pain in her right side. [Plaintiff] requested [the Center] to immediately arrange transport of her mother to Baton Rouge Medical Center for evaluation.
On May 19, 2008, [plaintiffs] mother was admitted into Baton Rouge General Medical Center with a diagnosis of a right subtrochanteric femur fracture. On May 22, 2008, she underwent surgical repair of her femur fracture and was discharged to [the Center] on May 25, 2008. [Plaintiff] states that after discharge, her mother’s physical condition continued to decline. On June 3, 2008, [plaintiffs] mother was transported to Baton Rouge General Medical Center where she died on June 5, 2008.
These factual allegations on their face state a cause of action against the Center for its failure to discover and diagnose the fracture and to render appropriate treatment and medical services in a timely manner, including referral for hospital, surgical, and other medical treatment later determined to be necessary. Such acts or omissions go beyond mere custodial negligence in allowing a patient to fall or otherwise sustain injury during physical movement, and fall squarely within the statutory definition of malpractice. See McLemore v. Westwood Manor Nursing and Rehabilitation, L.L.C., 37, 450, pp. 5-6 (La.App. 2nd Cir.8/20/03), 852 So.2d 1170, 1174. Thus, the first Coleman factor would appear to be met. Because expert medical evidence will undoubtedly be required to determine whether the failure to discover the fracture constituted a breach of the standard of care imposed upon a nursing home, the second Coleman factor would certainly be met with regard to these allegations.
|sIn the present case, plaintiff alleged that the right femur fracture was caused “in May 2008” when the Center’s employees “were transferring her mother from her wheelchair to her bed and/or were otherwise performing custodial duties ... in total disregard of her safety.” (Emphasis added.)[3] As we have previously noted, no specific date was given for the alleged negligent “act” or “accident.” Additionally, through the emphasized language above, plaintiff has raised the issue of whether her mother’s injury was attributable to factual events or circumstances other than the alleged transfer from her wheelchair to her bed. This conclusion is reinforced by plaintiffs broad itemization *336 of the negligent acts committed by the Center’s employees:
a. Failing to transfer [plaintiffs] mother from her wheelchair to her bed in a safe manner.
b. Failing to handle and/or transfer [plaintiff’s] mother in a manner consistent with her medical condition.
c. Inattentive while transferring and handling her mother.
(Emphasis added.)[4] Expert medical testimony may very well be required to ascertain the probable mechanism of the injury, as well as the standard of care necessary to have prevented its occurrence, given the patient’s condition.
|aIn Hernandez v. Diversified Healthcare-Abbeville, LLC, 09-546 (La.App. 3rd Cir.11/4/09), 24 So.3d 284, writ denied, 09-2629 (La.2/12/10), 27 So.3d 849, the plaintiffs brought a wrongful death action for the death of a nursing home resident, allegedly due to injuries sustained in multiple falls at the nursing home, without invoking a medical review panel. The plaintiffs identified their cause of action as one under the Nursing Home Residents’ Bill of Rights, La. R.S. 40:2010.8, et seq., and attempted to characterize the defendant nursing home’s negligence as “ordinary negligence,” including under-staffing of the nursing home and its failure to “deliver custodial care and services that a reasonably careful person would have provided under similar circumstances .... ” Id., 09-546 at p. 3, 24 So.3d at 286-87. The defendant nursing home excepted on the grounds of prematurity, and after considering the Coleman factors, the appellate court found that the petition’s “phraseology does not circumvent the requirement that the claim must be first submitted to the medical review panel.” Id., 09-546 at p. 4, 24 So.3d at 287.
Prominent among the relevant allegations in the present matter is plaintiffs allegation that the Center’s employees failed to “handle and/or transfer” her mother “in a manner consistent with her medical condition.” (Emphasis added.) To handle a nursing home resident in a manner “consistent with her medical condition” necessarily requires the professional skill and ability to assess the medical condition and to decide upon a course of action that takes account of that condition. As the court in Hernandez observed, “[t]he level of supervision and monitoring required by a patient necessarily requires an assessment of his medical condition and capabilities.” Id., 09-546 at p. 5, 24 So.3d at 287. The third Coleman factor is therefore met as to plaintiffs allegation described above, in addition to the |inother allegations relating to the Center’s failure to promptly discover the injury.
In this case, as in Hernandez, the nursing home resident had been diagnosed with dementia upon admission to the nursing home, and required “total” or “around-the-clock” nursing care. A “nursing home” such as the Center “undertakes ... to provide maintenance, personal care, or nursing for persons who, by reason of illness or physical infirmity or age, are *337 unable to properly care for themselves.” La. R.S. 40:2009.2(1). Although the Center undoubtedly had routine custodial duties regarding plaintiffs mother, in addition to its duties as a nursing home and health care provider, the totality of the circumstances alleged in plaintiffs petition clearly occurred in the overall context of the health care provider-patient relationship, given the patient’s need for total nursing care. We conclude that the fourth Coleman factor is met, as are the fifth and sixth factors.
In Cashio v. Baton Rouge Gen. Hosp., 378 So.2d 182, 183 (La.App. 1st Cir.1979), the plaintiffs’ decedent died of a “hospital staph” infection following surgery. The plaintiffs sought to characterize the basis of the hospital’s liability as the negligence of a premises owner, rather than medical malpractice based upon health care or professional services. We noted that the term “treatment” is not defined in the MMA and declined to “attempt to supply a universal definition of treatment.” Cashio, 378 So.2d at 184. We nevertheless rejected the plaintiffs’ “limited and very selective definition” of treatment as encompassing only those acts immediately involved with the surgery at issue, holding that “[a] plaintiff cannot control the progress and procedure of his claim by semantically designating one capacity of two or more belonging to the defendant as the desired one” in order to avoid the medical review panel procedure. Id. For similar reasons, |, r plaintiff’s conclusory allegations that “the alleged negligent handling of her mother ... were [sic ] strictly custodial duties of the nursing home and were not related to any medical treatment for her mother” cannot control the proper procedural disposition of this matter. See also Hernandez, 09-546 at pp. 3-4, 24 So.3d at 286-87. The fact that plaintiff may have made allegations sounding in both medical malpractice and general tort law does not remove her petition from the penumbra of the MMA, if a claim for medical malpractice is stated. See McKnight v. D & W Health Services, Inc., 02-2552, p. 7 (La.App. 1st Cir.11/7/03), 873 So.2d 18, 23.
Plaintiffs allegations here are sufficient to permit the determination that a medical malpractice claim has been asserted under the MMA, despite Ms. Hamilton’s artifice in drafting her petition to attempt to avoid the mandatory review panel procedure. We therefore conclude that a remand to the trial court is unnecessary, given the allegations of the petition discussed above. See, e.g., Hernandez, 09-546 at p. 5, 24 So.3d at 287-88, distinguishing Richard v. La. Extended Care Centers, Inc., 02-0978 (La.1/14/03), 835 So.2d 460, and Munson v. Lakewood Quarters Ltd. P’ship, 06-1428 (La.App. 1st Cir.7/18/07), 965 So.2d 448.
The judgment of the trial court is reversed, the dilatory exception of the defendant-relator, Baton Rouge Health Care Center, is sustained, and the petition and causes of actions of the plaintiff-respondent, Janice Hamilton, are dismissed without prejudice. All costs of court are assessed to the plaintiff-respondent.
WRIT GRANTED; REVERSED AND RENDERED.
WHIPPLE J., dissents for reasons assigned.
HUGHES J., dissents for reasons assigned by WHIPPLE, J.

. See n. 4. infra.

. We do not interpret the phrase "handling of a patient” as strictly limited to physical contact, movement, or transportation of a patient. In McKnight v. D & W Health Services, Inc., 02-2552, p. 5 (La.App. 1st Cir. 11/7/03), 873 So.2d 18, 21. we observed that the MMA docs not define "handling of a patient.” and that the generally prevailing meaning of "handling" in that context may be defined as including "the management [of] or having overall responsibility for supervising or directing a patient.” See also Merriam-Webster’s Collegiate Dictionary 565 (11th ed.2008).

. We note that in its written reasons for judgment, the trial court misinterpreted the petition as alleging that "while in the process of being transferred to the hospital, the decedent’s femur was fractured while [she was] in the custody of [the Center’s] staff.” (Emphasis added.) This conclusion would mean that the alleged "negligent transfer” incident occurred on May 19, 2008, after plaintiff requested that her mother be evaluated at the hospital and eight days after the alleged onset of pain and other symptoms. The trial court's conclusion has no support in the petition or elsewhere in the record.

. Reading plaintiffs petition in its entirety, it is evident that plaintiff is relying upon the circumstantial evidence of her recited chronology of May 11 through May 19, 2008 and the doctrine of res ipsa loquitur in framing her allegations of the Center’s purported negligent transfer from wheelchair to bed. This conclusion is supported by her later concluso-ry allegation that "the incident described herein could not have occurred but for the negligence of defendants [sic ] employees,” a classic invocation of res ipsa loquitur, and plaintiff's failure to specify the date upon which the alleged incident occurred. For the purpose of testing the sufficiency of a pleading, allegations of time and place are material and shall be considered as all other allegations of material matter. La. C.C.P. art. 860.