PARRO, J.
[ 2Louise M. Rivera appeals a judgment sustaining an exception raising the objection of prematurity and dismissing her claims, without prejudice, against Community Care Center of Covington, L.L.C., d/b/a Forest Manor Nursing Home (Forest Manor). For the following reasons, we reverse the judgment and remand for further proceedings.
FACTUAL AND PROCEDURAL BACKGROUND
On January 31, 2008, Ms. Rivera was being transported from Forest Manor to a medical facility as a wheelchair-bound passenger in a vehicle owned and operated by Bolden’s Transportation Service, Inc. (Bol-den’s). During this trip, the driver of the vehicle had to suddenly and forcefully engage the brakes, stopping the vehicle and causing Ms. Rivera to fall out of the wheelchair and hit the floor. She had no seat-belt on and was not strapped in to her wheelchair, nor was the wheelchair fastened to the van. Ms. Rivera was injured as a result of her fall and filed suit against Bolden’s, its owner, and its insurer. In a supplemental and amending petition, she named “Covington Nursing Home” as a defendant,[1] alleging that it had breached its duty to her by failing to provide her with a wheelchair that included a seatbelt or safety strap to secure her during transport and by allowing her to leave in an inadequately equipped wheelchair.
Forest Manor filed a dilatory exception raising the objection of prematurity, alleging that it was a qualified health care provider and that Ms. Rivera’s claim was premature, because she had not presented it to a medical review panel, as required by *1099 LSA-R.S. 40:1299.47(B)(l)(a)(i) of the Medical Malpractice Act. After a hearing, the district court sustained the exception and dismissed Ms. Rivera’s claims, without | ^prejudice. She filed an application for a supervisory writ, which was granted by this court for the limited purpose of returning the matter to the district court with an order to allow her to appeal the judgment. Her sole assignment of error in this appeal is that the district court erred in finding that her claims alleged medical malpractice and thus, her suit was premature until her claims had been submitted to a medical review panel.[2]
APPLICABLE LAW
Under the Louisiana Medical Malpractice Act (the Act),[3] all medical malpractice claims against qualified health care providers must be submitted to a medical review panel for consideration. See LSA-R.S. 40:1299.47(A)(l)(a). No civil action against a qualified health care provider or its insurer may be commenced in any court before the claimant’s proposed complaint has been presented to a medical review panel established pursuant to the Act. See LSA-R.S. 40:1299.47(B)(l)(a)(i). A request for a medical review panel is a prerequisite to and not the equivalent of a suit for medical malpractice. Houghton v. Our Lady of the Lake Hosp., Inc., 03-0135 (La.App. 1st Cir.7/16/03), 859 So.2d 103,105-06.
Louisiana Code of Civil Procedure article 926(A)(1) provides for the dilatory exception raising the objection of prematurity. Such an objection is intended to retard the progress of the action, rather than to defeat it. LSA-C.C.P. art. 923. An action is premature if it is brought before the right to enforce the claim sued on has accrued. See LSA-C.C.P. art. 423. The objection of prematurity raises the issue of whether the judicial right of action has yet to come into existence because some prerequisite condition has not been fulfilled. Bridges v. Smith, 01-2166 (La.App. 1st Cir.9/27/02), 832 So.2d 307, 310, writ denied, 02-2951 (La.2/14/03), 836 So.2d 121. Prematurity is determined by the facts existing at the time suit is filed. Houghton, 859 So.2d at 106.
The dilatory exception of prematurity is the proper procedural mechanism for a | qualified health care provider to invoke when a medical malpractice plaintiff has failed to submit the claim for an opinion by a medical review panel before filing suit against the provider. Spradlin v. Acadia-St. Landry Med. Found., 98-1977 (La.2/29/00), 758 So.2d 116, 119. If a lawsuit against a health care provider covered by the Act has been commenced in a court and the complaint has not been first presented to a medical review panel, the exception of prematurity must be sustained, and the claimant’s suit must be dismissed. Dunn v. Bryant, 96-1765 (La.App. 1st Cir.9/19/97), 701 So.2d 696, 699, writ denied, 97-3046 (La.2/13/98), 709 So.2d 752.
The burden is on the defendant to prove prematurity and initial immunity from suit as a qualified health care provider under the Act. Id. The defendant must also show that it is entitled to a medical review panel, because the allegations fall within the Act. Hamilton v. Baton Rouge Health Care, 09-0849 (La.App. 1st Cir.12/08/10), 52 So.3d 330, 333. *1100 On the trial of the dilatory exception, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds for the exception do not appear from the petition. LSA-C.C.P. art. 980. Where no evidence is presented at the trial of a dilatory exception of prematurity, the court must base its decision on the exception on the facts alleged in the petition, and all allegations therein must be accepted as true. LaCoste v. Pendleton Methodist Hosp., L.L.C., 07-0008 (La.9/5/07), 966 So.2d 519, 525.
The Act applies only to “malpractice”; all other tort liability on the part of a qualified health care provider is governed by general tort law. Armand v. Lady of the Sea Gen. Hosp., 11-1083 (La.App. 1st Cir.12/21/11), 80 So.3d 1222,1226, writ denied, 12-0230 (La.3/30/12), 85 So.3d 121. However, the fact that the plaintiff may have made allegations sounding in both medical malpractice and general tort law does not remove her petition from the penumbra of the Act, if a claim for medical malpractice is stated. See McKnight v. D & W Health Services, Inc., 02-2552 (La.App. 1st Cir.11/7/03), 873 So.2d 18, 23.
“Malpractice” is defined by LSA-R.S. 40:1299.41(A)(13), in pertinent part, as |,^follows:
“Malpractice” means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient.
“Health care” is defined in LSA-R.S. 40:1299.41(A)(9), in pertinent part, as follows:
“Health care” means any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient’s medical care, treatment, or confinement.
The supreme court has adopted a six-factor test for determining whether alleged negligent conduct by a qualified health care provider constitutes “malpractice,” as opposed to other fault. The factors to be considered include:
(1) whether the particular wrong is “treatment related” or caused by a dereliction of professional skill;
(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;
(3) whether the pertinent act or omission involved assessment of the patient’s condition;
(4) whether the incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital or other health care provider is licensed to perform;
(5) whether the injury would have occurred if the patient had not sought treatment; and
(6) whether the tort alleged was intentional.
See Coleman v. Deno, 01-1517 (La.1/25/02), 813 So.2d 303, 315-16.
The Act is in derogation of the rights of tort victims and its language must be strictly construed; any ambiguity must be resolved against coverage by the Act. Williamson v. Hosp. Serv. Dist. No. 1 of Jefferson, 04-0451 (La.12/1/04), 888 So.2d 782, 786-87. We conduct a de novo review of the trial court’s grant of the dilatory exception of prematurity, as the issue of whether a claim sounds in medical malpractice involves a question of law. Hernandez v. Diversified Healthcare-A *1101 beville, LLC, 09-546 (La.App. 3rd Cir.11/4/09), 24 So.3d 284, 285, writ denied, 09-2629 (La.2/12/10), 27 So.3d 849.
| fi ANALYSIS
The only evidence introduced at the hearing in this matter was Forest Manor’s certificate of enrollment as a qualified health care provider under the Act. Nursing homes are specifically listed as health care providers in LSA-R.S. 40:1299.41(A)(10), and there is no dispute that Forest Manor is a qualified health care provider.
No substantive evidence relating to Ms. Rivera’s claims was introduced by either party. In the absence of evidence relating to the nature of her claims against Forest Manor and the issue of prematurity, the following relevant factual allegations of the petition and amended petition must be accepted as true.[4]
On or about January 31, 2008, Louise M. Rivera was being transported as a wheel[chair] bound passenger on a vehicle being operated by Bolden’s Transportation Service, Inc. Ms. Rivera was being picked up from Forest Manor Nursing Home located in the city of Slidell, St. Tammany Parish, State of Louisiana, and being transported by said transportation company to a medical facility also located in St. Tammany Parish, State of Louisiana.
[[Image here]]
[Bolden’s] vehicle’s operator while proceeding in traffic to his next destination, for some unknown reason “slammed” on his brakes, ... causing the vehicle to suddenly and without warning come to an abrupt stop. This action and/or inaction by the vehicle’s operator and because of Ms. Rivera not being “strapped in” by a safety belt, therefore caused Ms. Rivera to be “slung” out of her wheelchair, and hit the floor of said vehicle.
[[Image here]]
Defendant, [Forest Manor,] by inaction, upon petitioner leaving said nursing home, failed in [its] duty to provide petitioner with a wheelchair that included a seatbelt or safety strap that would secure her in said wheelchair while being transported in a vehicle, and failed by [its] action upon allowing petitioner to leave said nursing home while petitioned,] when leaving, was in a wheelchair that was inadequate in providing her with a safety seatbelt system of protection during vehicular transportation to a medical facility.
[[Image here]]
At the time of the alleged incident, said unknown and/or unnamed [Forest Manor] employees were acting in the course and scope of their employment with [Forest Manor],
⅜: * *
The accident and/or incident described above was caused solely and proximately by the carelessness, negligence, action, and/or inaction and fault of ... [Forest Manor] and [its] employees ... in the following, non-exclusive particulars to-wit:
a) Failure to secure a wheelchair bound passenger by using a safety belt and/or strap as required when traveling and/or being | transported in a vehicle, so as to prevent said passenger from falling from or being thrown from wheelchair;
[[Image here]]
h) Failure to provide the plaintiff with a wheelchair that had a seatbelt or safe *1102 ty strap that would have secured her in her wheelchair;
i) Failure in disregarding plaintiffs safety while being transported by vehicle, by defendant’s actions and/or inactions by not providing her with an adequate safety seatbelt system of any kind and/or type;
j) Total disregard of plaintiffs safety while allowing her to be transported in a wheelchair with inadequate safety features;
k) Failure of all defendants to properly train their employees;
l) Failure of all defendants to properly supervise and/or negligent supervision of their employees!/]
Keeping in mind the statutory definitions and the six factors set out in the Coleman case, we examine the allegations in Ms. Rivera’s petition to determine whether her claims arose out of medical malpractice, such that Forest Manor would be entitled to a medical review panel.
As described in the petition and supplemental petition, the essence of the allegations concerning the negligence of Forest Manor is that its employees failed to provide Ms. Rivera with a wheelchair that included a safety strap of some kind to secure her in the chair during transportation to a medical facility. This action or inaction is not treatment related or caused by a dereliction of professional skill, nor does it require medical expertise to determine whether the appropriate standard of care was breached. In addition, these allegations do not directly involve the “handling of a patient, including loading and unloading of a patient,”[5] but whether the equipment provided to her during her transport was sufficient to ensure her safety. There was no medical skill required to make a decision concerning the safety equipment on the wheelchair or in the van that would transport her. A lay person can determine whether the Forest Manor staff should have provided some kind of security strap, such as the law requires for other vehicle passengers, to keep Ms. Rivera in her seat while being transported in the vehicle.
Ms. Rivera was already dependent on a wheelchair, so there was no assessment |Rof her condition involved in the decision to use this particular wheelchair to transport her. Also, the decision to send her to a medical facility had already been made; the petition does not allege any negligence regarding that decision or the decision for her to be seated in a wheelchair during the trip.
Nor was this incident related to her physician-patient relationship; the only relationship involved in this case was the relationship between certain employees of Forest Manor and Ms. Rivera. Although transporting a patient is within the scope of activities which a qualified health care provider may perform, there is no license needed for the allegedly negligent action or inaction complained of in this case, that is, determining whether a wheelchair-bound patient should be provided with a differently equipped wheelchair when being transported from one place to another.
Clearly, if Ms. Rivera had not been in the nursing home, any negligence of Forest Manor’s staff would not have had any effect on her. But there is nothing in the petition to indicate that a medical condition brought Ms. Rivera to Forest Manor; it was just as likely that the normal infirmities of advanced age necessitated her residing there. Also, this accident could have occurred with any vehicular transport, whether medically related or not, if her wheelchair did not have a safety strap *1103 or seatbelt. The fact that it occurred in the course of a medical transport does not bring it within the ambit of medical malpractice. Finally, there is no allegation or indication that the alleged failure to provide for her safety was intentional.
Examining the jurisprudence, we find that the case most closely resembling the facts of this case is the Louisiana Supreme Court case of Williamson, 888 So.2d 782. In that case, a wheel fell off a wheelchair while the patient in the chair was being moved by a medical center employee. The court construed the plaintiff’s petition, as supplemented and amended, finding that the plaintiff alleged an unintentional tort, in that the hospital or its employee was negligent in failing to repair the wheelchair and failing to ensure that the wheelchair was in proper working condition before returning it to service. Applying the Coleman factors, the supreme court reasoned as follows:
|9We find that the particular wrong alleged here, that the hospital negligently failed to repair the wheelchair and failed to insure that it was in proper working condition béfore returning it to service, is neither “treatment related” nor caused by a dereliction of “professional skill” within the meaning of the Medical Malpractice Act. The court of appeal reasoned that the transportation of a patient in a wheelchair as the patient is being discharged from the facility is part of the overall treatment of the patient, and is therefore “treatment related.” While that reasoning might apply in a different case, the wrong complained of here is that the hospital negligently failed to repair the wheelchair and placed it back into service without verifying that it was properly repaired. Those acts are not directly related to, nor do they involve, “treatment” of this patient.
Further, no “professional skill” was exercised in the repairing of the wheelchair or the decision to place it back into service. There is no allegation remaining in the petition as supplemented and amended that either the hospital or its employee was negligent in the transporting of or the decision to transport the patient in this manner.... [T]he significance of the term “malpractice” is that it is used to differentiate professionals from nonprofessionals for purposes of applying these statutory limitations of tort liability. Here, there has been no showing that a dereliction of professional medical skills resulted in the injury to the plaintiff.
[[Image here]]
With regard to the alleged negligent failure to repair a wheelchair, we cannot envision the need for expert medical evidence to determine whether the appropriate standard of care was breached.... While expert testimony might be necessary to establish a duty and breach thereof, there has been no showing that expert medical testimony will be necessary to establish the proper maintenance procedures regarding this wheelchair.
* * ⅜:
The court of appeal, apparently addressing the allegations of the original petition before it was supplemented and amended, found that the hospital employee’s decision to use a wheelchair to transport the patient involved an assessment of her condition. There is simply no showing that this plaintiffs transportation by wheelchair to the parking lot involved an assessment of her condition by the hospital’s employee.... Moreover, the pertinent act or omission was not the decision to transport this patient by wheelchair, but the faulty repair of the wheelchair.
[[Image here]]
*1104 The repair and use of a wheelchair to transport a patient has not been shown to be within the scope of activities a hospital must first be licensed to perform. While the transporting of a patient using a wheelchair might be an expected activity of a hospital, hospitals engage in all sorts of activities, and not every activity requires licensing from the state. As the defendant admits in brief, none of the standards set forth by the Louisiana Department of Health and Hospitals pertains specifically to the use of wheelchairs.
[[Image here]]
[The fifth] factor initially weighs to some extent in favor of the defendant, because the plaintiff likely would not have been transported in the wheelchair had she not sought treatment at the hospital. Such reasoning, however, employs a “but for” rationale that may be overly facile. It is just as reasonable to say that any visitor to the hospital, even those not seeking treatment, who used this particular wheelchair could have suffered injury.
[[Image here]]
[T]here is no allegation that the tort allegedly committed by the health care provider or its employee was intentional. Williamson, 888 So.2d at 789-91 (citations omitted). Certainly, the case before us does not involve the exact same factual circumstances, but, like the Williamson case, the allegations of negligence pertain to the condition of the equipment being used to transport the patient, not to the decision to transport, the means of transport, or an assessment of the patient’s condition necessitating use of the equipment.
In another case involving the failure to provide a patient with equipment in proper working condition, the supreme court again concluded that the petition did not sound in medical malpractice. In Blevins v. Hamilton Med. Ctr., Inc., 07-127 (La.6/29/07), 959 So.2d 440, 447, the complaint was that the patient’s bed moved as he tried to get out of it. The plaintiff alleged the causes of his fall were faulty equipment, the failure to keep the bed in the lowest position with the wheels locked, and the failure to properly instruct him on proper use and safety with regard to his bed. Applying the Coleman factors, the supreme court concluded that these complaints alleged general negligence, “as the wrongs alleged are not integral to the rendering of care and treatment by the health care provider to the patient in this case.” Blevins, 959 So.2d at 447.
In a case involving a 92-year-old double amputee who fell from a wheelchair while being transported by nursing home staff, the supreme court concluded that it was clear that the plaintiffs allegation involved the “handling of a patient, including loading and unloading of a patient,” which comes directly under the Act’s definition of “malpractice.” Richard v. Louisiana Extended Care Centers. Inc., 02-0978 (La.l/14/03), 835 So.2d 460, 468-69. However, the court further observed that although “an act of malpractice can occur in the rendition of professional services, the patient must still be in the process of receiving ‘health care’ from the doctor or hospital when the negligent rendition of professional services occurs.... This means that the act or omission must have occurred ‘during the patient’s medical care, treatment or | n confinement. ’ ” Richard, 835 So.2d at 468, citing Price v. City of Bossier City. 96-2408 (La.5/20/97), 693 So.2d 1169, 1172-73. The court further noted that in the case of a nursing home, the nursing home resident is not always receiving medical care or treatment for any specific condition. Because there was nothing in the record to indicate whether that plaintiff was in the nursing home for medical treatment, or whether the fall oc- *1105 eurred during the course of providing medical treatment, the supreme court remanded the case for a determination of whether the allegations that the plaintiff was negligently allowed to fall from her wheelchair constituted allegations of medical malpractice under Coleman. Richard, 835 So.2d at 468-69.
Factual circumstances similar to those in Richard existed in Munson v. Lakewood Quarters, LP., 06-1428 (La.App. 1st Cir.7/18/07), 965 So.2d 448. There the allegations of the petition were simply that Ms. Munson, who was disabled and in need of close supervision and care, fell from her wheelchair when an employee of the defendants, while attempting to transport Ms. Munson from her room to the dining area, failed to adequately secure her in her wheelchair. The record did not disclose whether Ms. Munson was placed in the nursing home for any specific treatment of a particular condition, rather than 24-hour custodial shelter, or that she was on her way to or from any medical treatment when the accident occurred. Therefore, this court concluded that the nursing home had failed to carry its burden of proving that Ms. Munson’s claim was governed by the Act and that it was accordingly entitled to a medical review panel. Munson, 965 So.2d at 454. As in Richard, the case was remanded for a full evidentiary hearing on whether the alleged negligence constituted medical malpractice under Coleman.
In the case before us, we likewise conclude that Forest Manor has failed to carry its burden of proving that Ms. Rivera’s claim was governed by the Act, such that it was entitled to a medical review panel. However, this case does not involve the patient’s fall from a wheelchair while inside the nursing home or while being pushed by a nursing home employee. Her fall occurred in a vehicle while she was being transported to a |12medical facility. Therefore, no additional evidence is needed to determine whether the decision of the nursing home to allow her to be transported in a wheelchair that was not equipped with a seatbelt or safety strap was within the ambit of the Act. Under the particular facts of this case, and having reviewed the jurisprudence and the Coleman factors as they relate to those facts, we conclude that Forest Manor has failed to prove that the negligent acts alleged by Ms. Rivera fell within the ambit of the Act, such that it would be entitled to a medical review panel.
CONCLUSION
Based on the above, we reverse the district court judgment that upheld the defendant’s exception of prematurity, and remand this case to the district court for further proceedings in accord with this opinion. All costs of this appeal are assessed to Forest Manor.
REVERSED AND REMANDED.

. The original petition referred to this facility as Forest Manor Nursing Home, but when named as a defendant in her supplemental and amending petition, the name given was Covington Nursing Home. A second supplemental and amending petition stated that the name of the nursing home defendant was Alexandria Investments, L.L.C., d/b/a Forest Manor Nursing Home, and substituted that name in all the paragraphs of the petition that had alleged fault on the part of Covington Nursing Home. However, responsive pleadings filed by the nursing home defendant stated that the correct name was Community Care Center of Covington, L.L.C., d/b/a Forest Manor Nursing Home. The court’s judgment was rendered in favor of Community Care Center of Covington, LLC, d/b/a Forest Manor Nursing Home. Therefore, this opinion will continue to designate the nursing home defendant as "Forest Manor.”

. After the dilatory exception was filed, as a precautionary measure, Ms. Rivera applied to the Patients’ Compensation Fund to have a medical review panel convened to evaluate her claims against Forest Manor.

. Louisiana Revised Statutes 40:1299.41 through 1299.49.

. See LaCoste, 966 So.2d at 525.

. See LSA-R.S. 40:1299.41(A)(13).