MOORE, J.
h Southern Oaks Nursing & Rehabilitation Center LLC appeals a judgment in rule which found that the claims of the late Lessie Porter (now represented by her children) fell outside the coverage of the Louisiana Medical Malpractice Act (“MMA”) and a partial summary judgment which found that Ms. Porter’s claims were in tort, not in medical malpractice. For the reasons expressed, we affirm the judgment in rule but reverse the summary judgment and remand the case for further proceedings.

Factual and Procedural Background

In November 2009, Ms. Porter’s family placed her in Southern Oaks for care of various mental and physical illnesses, including dementia. The dementia often made her agitated and combative; she repeatedly tried to “escape” from the facility. Medical records also described her as short (5'4") and heavy (201 lbs.).
On Thanksgiving evening, November 26, Ms. Porter was especially agitated, having twice left her room and crawled some distance down the hall; both times, attendants picked her up, got her in a wheelchair, rolled her back to her room and put her in bed. About 15 minutes later, she escaped again, but did not get as far. Attendants found her lying on her stomach in the doorway, “halfway in, halfway out.” According to a Department of Health & *1199 Hospitals report, the LPN on duty, Stephanie Mims-Bolden, apparently frustrated, said, “If she wants to stay on the floor, let her stay on the floor.” Without obtaining a doctor’s order, Nurse Mims-Bolden got a tranquilizer, injected Ms. Porter, and left her on the floor a few more minutes. Because of how Ms. Porter was positioned in the doorway, she | ¡.could not be lifted in the normal manner, one attendant under each arm to hoist her up. Nurse Mims-Bolden asked several CNAs to help drag Ms. Porter across the floor to her bed; one of them, Arshalon Powell, finally agreed. Together, they grabbed Ms. Porter’s feet and lower legs, and dragged her across the polished-brick floor into her room, scratching her stomach and elbows. Nurse Mims-Bolden gave her another shot and locked her in; about 15 minutes later, Ms. Porter was found asleep on the floor. Nurse Mims-Bolden and another CNA then properly lifted her onto the bed, changed her diaper and tucked her in for the night.
Ms. Porter filed a request for medical review panel (“MRP”) with the Patient’s Compensation Fund (“PCF”) in September 2010, alleging medical malpractice. However, a PCF compliance expert replied by letter that in the PCF’s view, the allegations were “not within the scope of medical malpractice,” so no MRP was ever convened.
Simultaneously, Ms. Porter filed the instant petition in the First Judicial District Court, alleging that Southern Oaks’ staff failed to meet her needs, abused her, and abused her through negligence. She claimed damages for breach of contract, breach of the Nursing Home Residents’ Bill of Rights, La. R.S. 40:2010.8, and breach of the standard of care; she also requested a jury trial.
Southern Oaks answered, initially raising denials, the affirmative defense that it was a qualified healthcare provider and subject to the protections of MMA, and an exception of no cause of action based on the exclusive remedy of injunction in R.S. 40:2010.9. Some months later, |ahowever, Southern Oaks amended its answer to admit liability, specifically that Ms. Porter was:
dragged and/or lifted, while in a face down position, from the doorway area of her room to the interior of her room by employees of defendant, and * * * thereafter left unattended for a period of time[;] employees failed to use appropriate procedures in moving and/or handling Ms. Porter * * *, and failed to timely and fully report the incident over the course of the next several days.
The parties also entered a stipulation as to these facts. Southern Oaks reserved its rights to a trial on the issue of damages only, and reiterated its affirmative defenses and exception of no cause of action.
In August 2013, Southern Oaks filed a renewed exception of no cause of action or, alternatively, motion for summary judgment. It reiterated that the exclusive remedy for violations of the Nursing Home Residents’ Bill of Rights is injunction, and argued that any claim for breach of contract fell under MMA, La. R.S. 40:1299.41.
One week later, Ms. Porter filed the instant motion for partial summary judgment, urging that Southern Oaks’ acts were not under MMA. In support, she attached the letter from the PCF’s compliance director and the deposition of a Southern Oaks CNA who witnessed the event and described in detail what Nurses Mims-Bolden and Powell did to Ms. Porter.
*1200 In October 2013, the PCF filed a memo aligning itself with Ms. Porter and opposing the rule filed by Southern Oaks. In effect, the PCF sought a rule to declare the claim not subject to MMA, as by definition medical malpractice does not include intentional acts of injury, La. R.S. 40:1299.41 hAQ-S).[1] Ms. Porter also filed a brief urging that intentional acts are excluded from MMA. Around this time, Ms. Porter passed away and her children filed an amended petition to be substituted as plaintiffs.

Action in the District Court

At a hearing in October 2013, the parties laid out their positions. When it appeared that the court was going to grant Ms. Porter’s motion for summary judgment and the PCF’s rule, Southern Oaks filed into evidence the “entire chart.” The court allowed this, but apparently did not read it, orally ruling that even though the case was close, summary judgment was proper. The court rendered partial summary judgment in favor of Ms. Porter, and judgment in rule in favor of the PCF, ruling that the case was not subject to MMA.
Southern Oaks moved for new trial on grounds that the court failed to consider the entire chart. At a hearing in May 2014, the court granted a new trial and allowed the parties to argue extensively. The court ultimately concluded, “An elderly person being drug and left in a mess in their own room is just not treatment related.” The court again granted Ms. Porter’s motion for partial summary judgment and the PCF’s rule, and certified the judgment as immediately appealable under La. C.C.P. art. 1915 B(l).
Southern Oaks has appealed, raising three assignments of error. It prefaces its argument by stating that it has always acknowledged liability, specifically, that Ms. Porter was improperly handled; the injury was not intentional, and thus the conduct fell under MMA; and this judgment will | Bhave a “chilling effect” on the delivery of healthcare.

Discussion: Is this Claim Subject to MMA?

By its first assignment of error, Southern Oaks urges that the court erred in ruling that the claim is not subject to the coverage of MMA. Specifically, it contends that moving a patient in a nursing home is part of treatment or treatment-related, and should be considered “professional services” and part of MMA. It argues that MMA defines malpractice as any unintentional tort or breach of contract based on healthcare or professional services, including “the handling of a patient.” R.S. 40:1299.41 A(13). It contends that the conduct in this case was handling a patient, and thus is covered by MMA; the alternative of letting her stay on the floor was more hazardous to Ms. Porter. Also, the nurses’ actions were professional services, as they had to get her in the bed. In support, they cite the affidavit of an RN, Jennifer Kimball, who was not a witness to the incident but opined that it “arose out of the need to provide care to Ms. Porter.” Because the nurses’ acts were for the purpose of ultimately providing healthcare, Southern Oaks argues they met the principal criterion of Coleman v. Deno, 2001-1517 (La.1/25/02), 813 So.2d 303, that “the particular wrong is treatment-related.” It also contends that the First Circuit’s opinion in Hamilton v. Ba *1201 ton Rouge Health Care, 2009-0849 (La.App. 1 Cir. 12/8/10), 52 So.3d 330, is on point, holding that getting a patient into bed is medical care, and that this court’s opinion in Furlow v. Woodlawn Manor Inc., 39,485 (La.App. 2 Cir. 4/20/05), 900 So.2d 336, writ denied, 2005-1320 (La.12/9/05), 916 So.3d 1064, is inferentially on point: although it 16held that failing to change a patient’s diaper is not healthcare, it is implied that trying to get a patient to a place of safety is.
Ms. Porter responds that the PCF declined the claim as not medical malpractice; in its answer, Southern Oaks admitted liability but never alleged that its employees committed any intentional conduct; and the only rational assessment of this incident is that it was an intentional tort. She adds that this was much more than just “handling” the resident, and was akin to the conduct found to lie outside MMA in Furlow v. Woodlawn Man- or, supra. She also contends that the opinion in Hamilton v. Baton Rouge Health Care, supra, was based on “total nursing care,” not just on allowing the resident to fall.
The PCF urges that the statutory definitions of “malpractice” and “tort,” La. R.S. 40:1299.41 A(13) and A(22), are not hard to understand, and the nurses’ acts of dragging Ms. Porter and leaving her on the floor for 15 minutes were deliberate. It strongly disagrees with Southern Oaks’ position that handling, no matter how substandard, or even intentional, always constitutes malpractice and falls under MMA.
Malpractice is defined by La. R.S. 40:1229 A(3), in pertinent part, as
[A]ny unintentional tort or any breach of contract, based on health care or professional services rendered, or which should have been rendered, but a health care provider, to a patient, including * * * the handling of a patient, including loading and unloading of a patient[.]
Tort is defined as “any breach of duty or any negligent act or omission proximately causing injury or damage to another.” R.S. 40:1229 A(22). Health care is defined by R.S. 40:1229 A(9) as
17[A]ny act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient’s medical care, treatment, or confinement^]
The courts have steadfastly held that MMA and its limitations on tort liability for qualified healthcare providers apply only to claims arising from medical malpractice, and that all other tort liability on the part of á qualified healthcare provider is governed by general tort law. Coleman v. Deno, supra; LaCoste v. Pendleton Methodist Hosp., 2007-0008 (La.9/5/07), 966 So.2d 519; Furlow v. Woodlawn Manor, supra. In Coleman v. Deno, supra, the court set forth six factors to assist a court .in determining whether a claim sounds in medical malpractice and is subject to. MMA:
(1) whether the particular wrong is “treatment related” or caused by a dereliction of professional skill;
(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;
(3) whether the pertinent act or omission involved assessment of the patient’s condition;
(4) whether an incident occurred in the context of a physician-patient rela *1202 tionship, or was within the scope of activities which a hospital is licensed to perform;
(5) whether the injury would have occurred if the patient had not sought treatment; and
(6) whether the tort alleged was intentional.
Coleman v. Deno and its progeny convince us that any determination that an act falls under (or does not fall under) MMA depends on a totality of circumstances illuminating the ultimate conclusion that the act constituted healthcare. We therefore cannot accept Southern Oaks’ strained contention 1 sthat any handling of a patient must constitute healthcare because “handling” appears in the definition of malpractice. In fact, the court in Hamilton v. Baton Rouge Health Care, supra, recognized this, when it held that failure to discover and diagnose a fracture that occurred when the patient fell down in the nursing home stated a cause of action under MMA:
Such acts or omissions go beyond mere custodial negligence in allowing a patient to fall or otherwise sustain injury during physical movement, and fall squarely within the definition of malpractice. Id. at 7, 52 So.3d at 335.
The same court has held that failing to secure a nursing home patient with a seat-belt during a van ride — which could well be considered an act of handling the patient — did not constitute medical malpractice, Rivera v. Bolden’s Transp. Serv., 2011-1669 (La.App. 1 Cir. 6/28/12), 97 So.3d 1096. Another court has held that failure to transport a car-accident victim by helicopter, instead of by ambulance— which could also be deemed handling the patient — did not constitute medical malpractice, Robinson v. Allen Parish Police Jury, 2005-0394 (La.App. 3 Cir. 12/30/05), 918 So.2d 535, writ denied, 2006-0233 (La.4/24/06), 926 So.2d 552.
In addition to this jurisprudence, the court also considers that Southern Oaks admitted its liability in the tort suit. The stipulation is a judicial confession and constitutes full proof against the party who made it. La. C.C. art. 1853; Nestor v. Louisiana State Univ. Health Sciences Ctr., 40,378 (La.App. 2 Cir. 12/30/05), 917 So.2d 1273, writ denied, 2006-0221 (La.4/24/06), 926 So.2d 551. We also must consider that PCF initially rejected the claim as falling outside MMA. Although administrative interpretation of a regulation is not binding, it is controlling unless it is ^plainly erroneous or inconsistent with the regulation. Women’s & Children’s Hosp. v. State, 2008-0946 (La.1/21/09), 2 So.3d 397.
In sum, the district court was not plainly wrong to find that the alleged incident was not part of treatment or treatment-related, did not constitute healthcare or professional services, and is not subject to the special provisions of MMA. This assignment of error lacks merit.

Was Summary Judgment Proper?

By its second assignment of error, Southern Oaks urges that summary judgment was inappropriate because intent is seldom suitable for disposition by summary judgment. For the general rule, it cites Indigo Minerals LLC v. Pardee Minerals LLC, 45,160 (La.App. 2 Cir. 5/28/10), 37 So.3d 1122, writs denied, 2010-1669, - 1677 (La.10/8/10), 46 So.3d 1274. For this particular case, it contends that whether its staff intended to commit an intentional tort on Ms. Porter is a genuine issue of material fact. By its third assignment of *1203 error, Southern Oaks adds that liability for an intentional tort attaches only where there is an intent to injure. It cites the jurisprudence arising from intentional-injury exclusions in insurance policies, Breland v. Schilling, 550 So.2d 609 (La.1989). It also contends that even in medical malpractice, one court has recognized the distinction, holding that while sticking a needle into the patient’s skin to draw blood was intentional, the resulting venopuncture was merely negligent, Cudges v. Our Lady of Lourdes Hosp., 514 So.2d 195 (La.App. 3 Cir.1987).
Ms. Porter and the PCF respond by citing Nurse Gardner’s deposition and the DHH investigation. From these, they argue, the intent to commit an | inintentionaI tort may be easily and inevitably inferred, making summary judgment proper.
The motion for summary judgment is a procedural device used when there is no genuine issue of material fact for trial. Schultz v. Guoth, 2010-0343 (La.1/19/11), 57 So.3d 1002, and citations therein. The motion shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B. The procedure is favored and shall be construed to secure, the just, speedy and inexpensive determination of actions. La. C.C.P. art. 966 A(2). Appellate review of a summary judgment is de novo. Schultz v. Guoth, supra.
Even after the 1996 and 1997 amendments to Art. 966 that elevated summary judgment from disfavored to favored status,[2] the courts have continued to hold that the procedure is “seldom appropriate for determinations based on subjective facts of motive, intent, good faith, knowledge, or malice.” Hogg v. Chevron USA, 2009-2632 (La.7/6/10), 45 So.3d 991, fn. 9; Jones v. Estate of Santiago, 2003-1424 (La.4/14/04), 870 So.2d 1002; Dortch v. Rollins, 47,525 (La.App. 2 Cir. 4/10/13), 113 So.3d 443. On de novo review of this claim falling outside MMA, we are constrained to find that the subjective facts of motive and intent create genuine issues of material fact precluding summary judgment. While the In act of dragging Ms. Porter by her feet was surely intentional', this does not prove that Southern Oaks’ employees intended to hurt her. The credible claim remains that they were responding to a difficult situation with a refractory resident and had few alternatives to get her back into bed. On this record, Southern Oaks is entitled to present to the fact finder evidence that its conduct was reasonable under the circumstances. It may also contend that the intent to put Ms. Porter in bed did not include the intent, to inflict the panoply of harms alleged in the petition, a distinction recognized in Cudges v. Our Lady of Lourdes Hosp., supra.[3] These assignments of error have merit: the summary judgment in reversed and the case is remanded for further proceedings.

Decree

For the reasons expressed, we affirm the judgment in rule and its holding that *1204 this case falls outside the coverage of MMA. However, we reverse the summary judgment, find genuine issues as to motive and intent, and remand the case for further proceedings. Costs are to be paid one-third by the plaintiffs, one-third by the Louisiana Patient’s Compensation Fund, and one-third by Southern Oaks Nursing <& Rehabilitation Center LLC.
AFFIRMED IN PART, REVERSED IN PART, REMANDED.

. The record does not show that PCF was ever formally joined as a party, but nobody objected to letting it participate in the trial court hearings or file a brief in this appeal.

. 1996 La. Acts (Ex. Sess.) No. 9, effective May 1, 1996, and 1997 La. Acts No. 483, eff. July 1, 1997; see, generally, Mark Tatum & William Norris III, "Summary Judgments and Partial Summary Judgments in Louisi- . ana: The State We’re In,” 59 La. L. Rev. 131 (1998).

. Cudges fell under MMA, but did not have an admission of liability from the healthcare provider.