McClendon, J.
12Plaintiffs/appellants, Patricia Andrews and Darin Andrews, appeal the trial court’s grant of an exception raising the objection of prematurity filed by the defendant/appellee, Our Lady of the Lake Ascension Community Hospital, Inc. d/b/a St. Elizabeth Hospital (“St. Elizabeth Hospital”). The trial court concluded that plaintiffs’ suit was premature because they had not submitted their claims to a medical review panel as required by the Medical Malpractice Act (“MMA”), LSA-R.S. 40:1299.41 et seq. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
On November 16, 2012, Patricia Andrews and Darin Andrews filed a Petition for Damages, naming St. Elizabeth Hospital as a defendant. Plaintiffs allege that on November 26, 2011, Mrs. Andrews was admitted to St. Elizabeth Hospital for an apparent seizure she suffered earlier that day. Following treatment and at the time of her discharge from St. Elizabeth Hospital, plaintiffs allege that Mrs. Andrews “was unconscious and/or asleep, and unable to ambulate on her own.” Plaintiffs also allege that hospital staff attempted to move Mrs. Andrews from her bed to a hospital wheelchair, but the “hospital staff dropped [Mrs. Andrews] on the ground, *38 causing [Mrs. Andrews] to shatter her foot and ankle.”
In response to plaintiffs’ petition, St. Elizabeth Hospital filed an “Exception of Prematurity” wherein it asserted that the plaintiffs’ action was premature because the plaintiffs had not submitted then-claims to a medical review panel as required by the MMA, prior to instituting their action in the district court.
Plaintiffs subsequently filed a “First Amending and Supplemental Petition for Damages,” alleging that the “bed and/ or wheelchair which caused [Mrs. Andrews’] injuries was/were unreasonably dangerous in its normal use, and therefore defective.” Plaintiffs further alleged, as previously alleged in their original petition, that their claims arose under “general negligence” rather than “medical malpractice.”
| .(¡Following a hearing, the trial court granted St. Elizabeth Hospital’s exception raising the objection of prematurity and dismissed plaintiffs’ claims without prejudice. Plaintiffs have appealed, asserting that because their allegations of liability and theories of negligence fall outside of the purview of the MMA, the trial court erred in concluding that their action was premature.
DISCUSSION
A medical malpractice claim against a qualified health care provider[1] is subject to dismissal if the claim has not been first presented to a medical review panel. LSA-R.S. 40:1299.47(A)(1)(a). The dilatory exception of prematurity is the proper procedural mechanism for a qualified health care provider to invoke when a medical malpractice plaintiff has failed to submit the claim for an opinion by a medical review panel before filing suit against the provider. Rivera v. Bolden’s Transp. Serv., Inc., 11-1669 (La.App. 1 Cir. 6/28/12), 97 So.3d 1096, 1099. If a lawsuit against a health care provider covered by the MMA has been commenced in a court and the complaint has not been first presented to a medical review panel, the exception of prematurity must be sustained, and the claimant’s suit must be dismissed. Id.
The burden is on the defendant to prove prematurity and initial immunity from suit as a qualified health care provider under the Act. Id. The defendant must also show that it is entitled to a medical review panel, because the allegations fall within the MMA. Id. Where no evidence is presented at the trial of the dilatory exception of prematurity, the court must base its decision on the exception on the facts alleged in the petition, and all allegations therein must be accepted as true. Rivera v. Bolden’s Transp. Serv., Inc., 97 So.3d at 1100.
 The MMA applies only to “malpractice,” and all other tort liability on the part of a qualified health care provider is governed by general tort law. Id. However, the fact that the plaintiff may have made allegations sounding in both Rmedical malpractice and general tort law does not remove her petition from the penumbra of the MMA, if a claim for medical malpractice is stated. Id.
The MMA defines “malpractice,” in pertinent part, as:
[A]ny unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including fail *39 ure to render services timely and the handling of a patient, including loading and unloading of a patient.... (Emphasis added.)
Louisiana Revised Statutes 40:1299.41(A)(13).
Plaintiffs allege that hospital staff dropped Mrs. Andrews when they attempted to move her from her bed to a wheelchair. This clearly falls within “malpractice” as defined in LSA-R.S. 40:1299.41(A)(13). Plaintiffs contend, however, that the alleged acts do not satisfy the six-factor test for determining whether an act is “malpractice” for purposes of the MMA as set forth by the Louisiana Supreme Court in Coleman v. Deno, 01-1517, 01-1519, 01-1521 (La.1/25/02), 813 So.2d 303.[2]
The Third Circuit addressed this same argument in McMillian v. Westwood Manor Nursing Home, Inc., 12-54 (La.App. 3 Cir. 5/30/12), 92 So.3d 623, writ denied, 12-1857 (La.11/9/12), 100 So.3d 839. In McMillian, two hospital attendants attempted to transfer a patient following his surgery, but one of the attendants lost his balance and the patient’s head struck a wall. The patient and his wife filed suit in district court, alleging that the patient, as a ^result of the accident, had to undergo immediate surgery and' sustained severe and permanent injuries. The defendant/qualified health care provider filed an exception raising the objection of prematurity, urging that the plaintiffs’ claims had not first been submitted to a medical review panel in accordance with the MMA. The plaintiffs contended that the alleged acts of the health care provider do not satisfy the “malpractice” test set forth in Coleman v. Deno. The Third Circuit, finding the test inapplicable, reasoned:
We note that the allegations in the petition assert facts that fall squarely within the definition of “malpractice” in La.R.S. 40:1299.41(A)(13). As a civilian jurisdiction, we look first to the plain language of the statute, and only resort to interpretive analysis when there is some ambiguity. La. Civ. Code art. 9. We find no ambiguity in La. R.S. 40:1299.41(A)(13). Claims involving the handling of a patient, including loading and unloading, are covered by the MMA and must be submitted to a medical review panel.
McMillian, 92 So.3d at 625.
We likewise find no ambiguity in LSA-R.S. 40:1299.41(A)(13) and any- claims involving “handling of a patient, including loading and unloading,” are covered by the MMA and must be submitted to a medical review panel.[3] It is immaterial that Mrs. Andrews may have been discharged at the time hospital staff attempted to move her. Further, plaintiffs’ allegations that the bed *40 and/or wheelchair were defective do not remove her petition from the penumbra of the MMA, given that a claim for medical malpractice is stated. Rivera v. Bolden’s Tramp. Serv., Inc., 97 So.3d at 1100.
CONCLUSION
We conclude that the trial court did not err in granting the exception raising the objection of prematurity. Accordingly, we affirm the March 18, 2018 judgment. Costs of this appeal are assessed to plaintiffs, Patricia Andrews and Darin Andrews.
AFFIRMED.

. The parties do not dispute that St. Elizabeth Hospital is a qualified health care provider under the MMA.

. In Coleman v. Deno, the Louisiana Supreme Court adopted the following six-factor test for determining whether a negligent act by a qualified health care provider constitutes "malpractice” and is covered by the MMA:
[1] whether the particular wrong is 'treatment related' or caused by a dereliction of professional skill,
[2] whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached,
[3] whether the pertinent act or omission involved assessment of the patient's condition,
[4] whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,
[5] whether the injury would have occurred if the patient had not sought treatment, and
[6] whether the tort alleged was intentional.
813 So.2d at 315-16.

. Further, even if we were to apply the factors set forth in Coleman, 813 So.2d at 315-16, the result would remain the same.