Judgment rendered April 13, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,405-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SHAWANDA EVANS JACKSON,                    Plaintiff-Appellant
DULY APPOINTED TESTAMENTARY
EXECUTRIX OF THE ESTATE OF
WILLIE E. JACKSON, JR.


                         versus


WILLIS-KNIGHTON HEALTH                      Defendant-Appellee
SYSTEM D/B/A WILLIS-
KNIGHTON MEDICAL CENTER


* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 622,051

Honorable Ramon Lafitte, Judge

* * * * *

SHAWANDA EVANS JACKSON                      In Proper Person


WATSON, BLANCHE, WILSON & POSNER    Counsel for Appellee
By: Shelby G. LaPlante


* * * * *

Before MOORE, ROBINSON, and HUNTER, JJ.

**MOORE, C.J.**

A hospital patient, Willie E. Jackson, brought an action against Willis-Knighton Medical Center ("Willis-Knighton" or "hospital") seeking damages for injuries he sustained when he fell off a gurney while being transported to a hospital room by hospital employees. The hospital filed an exception of prematurity on grounds that the plaintiff had not first presented his claim to a medical review panel ("MRP"). Before the matter was decided, the plaintiff passed away; his widow, Shawanda Jackson, was substituted as plaintiff. Following amendments to the original petition and a hearing on Willis-Knighton's renewed exception of prematurity, the district court held that the plaintiff's claim sounded in medical malpractice, granted the exception of prematurity, and dismissed the plaintiff's petition without prejudice.

This appeal followed. For the following reasons, we affirm.

## FACTS

Willie E. Jackson, age 68, filed a "petition for medical malpractice" on January 30, 2020, alleging that Willis-Knighton committed malpractice due to substandard medical care while he was a patient being transported on a gurney to a hospital room. Specifically, he alleged that he was dumped or allowed to fall off a gurney or stretcher and sustained serious injuries as a result. Willis-Knighton responded with a dilatory exception of prematurity, arguing that the medical malpractice claim must be first reviewed by an MRP convened pursuant to the Louisiana Medical Malpractice Act ("LMMA" or "the Act"). Although Jackson had filed a complaint with the Louisiana Division of Administration Patient's Compensation Fund for appointment of an MRP just nine days before he filed the petition, the

complaint was not reviewed by an MRP before he filed his petition for medical malpractice in district court.

A hearing on Willis-Knighton's exception was initially set for July 27, 2020, but Jackson passed away one week before the scheduled hearing. The matter was continued. His wife, Shawanda Evans Jackson, appearing pro se as executrix of his estate, was substituted as party plaintiff. Ms. Jackson also filed an amended petition, dropping the original allegations of medical malpractice; instead, she characterized the claim as a "petition for damages" for general negligence, thereby attempting to avoid an MRP.

Factually, the amended petition alleged that on January 31, 2019, Jackson was admitted to the emergency room of Willis-Knighton North about 2:30 p.m., after becoming disoriented at a dialysis center. A series of tests, including a CT scan and MRI, indicated that he suffered a series of mini-strokes, sometimes called transient ischemic attacks ("TIAs"). As his condition improved and he became coherent, he was in the process of being transported to a hospital room when the accident occurred. The petition alleged that while the two hospital employees were rolling the gurney into the elevator, Jackson was dumped or fell from the gurney or stretcher. The petition alleged that Jackson suffered injuries, including a swollen face, bruises, an eye injury, and humiliation because the employees laughed at him. Further, the injury caused his mental status to deteriorate such that he could not talk or move, and had bruises all over his body.

A hearing on the exception of prematurity was finally held on March 15, 2021. At the hearing, the court explained to Ms. Jackson the MRP process was required by law and that her petition could not be filed until that process had run its course, that she would not be prejudiced by whatever

2

decision the MRP rendered, and she could still file a suit if she was not satisfied by the MRP's decision. Nevertheless, Ms. Jackson persisted in her position that her claim lay outside the LMMA, and she persuaded the court to allow her to amend her petition again. The court gave Ms. Jackson two weeks to amend her petition and reset a hearing for June 28, 2021.

Ms. Jackson timely filed an "amended petition for general damages under Louisiana premise liability." The operative new allegation reads:

> Additional Facts that defendants had actual knowledge of the defective elevator incident at its facility . . . on February 1, 2019 at 10:45 a.m., at time they **Hit** and **Dumped** Patient, Willie E. Jackson, Jr. **Entire** (270 lbs.) **Body into** the **Elevator's floor and wall** and allowed the **unsafe Stretcher** to **Hit** and/or **assault;** Causing severe injuries to head, face and entire body at or about that time and place the accident occurred. (Emphasis in original.)

The petition further alleged that Willis-Knighton had actual knowledge of Jackson's preexisting condition (TIAs) that hastened his death, and actual knowledge that the elevators are not covered by the LMMA. It alleged Jackson was an "inpatient/invitee" covered by Louisiana premise liability law.

At the June 28, 2021, hearing, Ms. Jackson argued that Willis-Knighton's employees transporting Jackson on the gurney "dumped him in the elevator as a result of the malfunctioning elevator not being level, which is outside the scope of medical malpractice." She argued that "it is not malpractice" because "[t]he elevator is what caused it."

Willis-Knighton argued that notwithstanding how the plaintiff styled her petition, the allegations fell within the scope of the LMMA, which applies to any unintentional tort based on health care or professional

3

services, including handling a patient, loading and unloading a patient, or transporting a patient.

The district court agreed. It granted Willis-Knighton's exception of prematurity and dismissed the petition without prejudice.

This appeal followed.

## DISCUSSION

On appeal, the pro se plaintiff asserts three assignments of error that have no bearing on the judgment appealed from or on any issue of law before the court, namely, whether the judgment granting the exception of prematurity dismissing the petition without prejudice was correct. Accordingly, we defer discussion of the merits of the assignments raised by the plaintiff until the end of this opinion.

The LMMA governs medical malpractice claims filed in the State of Louisiana. La. R.S. 40:1231.1 *et seq.* The Act defines "malpractice" as

> any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and *the handling of a patient including loading and unloading of a patient*[.] (Emphasis added.)

La. R.S. 40:1231.1 A(13).

A medical malpractice claim against a private qualified health care provider is subject to dismissal on an exception of prematurity if the claim has not first been presented to a medical review panel. La. R.S. 40:1231.8 B; *Matherne v. Jefferson Parish Hosp. Dist. No. 1*, 11-1147 (La. App. 5 Cir. 5/8/2011), 90 So. 3d 534, *writ denied*, 12-1545 (La. 10/12/12), 98 So. 3d 873. Because the question whether a claim sounds in medical malpractice is

4

a question of law, appellate review of the trial court's grant of the dilatory exception of prematurity is *de novo*. *Id.*

In *Coleman v. Deno*, 01-1517 (La. 1/25/02), 813 So. 2d 303, the Louisiana Supreme Court set out a six-factor test to determine if a negligent act is covered by the LMMA. These factors are:

(1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill,

(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached, and

(3) whether the pertinent act or omission involved assessment of the patient's condition.

(4) Whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,

(5) Whether the injury would have occurred if the patient had not sought treatment, and

(6) Whether the tort alleged was intentional.

*Coleman, supra* at pp. 17-18, 813 So. 2d at 315-16.

Ms. Jackson maintains, however, that her claim is not based in medical malpractice or any breach of a professional skill. Rather, after two attempts to move the claim outside the LMMA by amending the original petition expressly alleging medical malpractice, she now couches her claim as a premises liability claim, alleging that the elevator and/or the gurney were defective, and she attributes the act or agency of Mr. Jackson's fall to these factors rather than any act or omission by hospital medical staff or employees.

In *Blevins v. Hamilton Med. Ctr., Inc.*, 07-127 (La. 6/29/07), 959 So. 2d 440, a case listed in the table of authorities in Ms. Jackson's appeal brief,

5

a patient brought a personal injury action against the hospital for injuries he sustained when he fell in his hospital room. He alleged that his hospital bed rolled when he attempted to get out of the bed to use a bedside commode; the movement of the bed caused him to lose his balance and fall, tearing the meniscus of his right knee. The plaintiff filed a request for an MRP, and filed a petition for damages in district court, alleging nine acts of negligence, designated by the letters (a) through (i), that proximately caused his injury.

The hospital filed a dilatory exception of prematurity, which the district court granted with respect to six of the allegations of medical malpractice, but denied with respect to allegations (g), (h), and (i):

(g) Failing to furnish patient with equipment in proper working condition;

(h) Failing to keep the patient's bed in the lowest position with the wheels locked; and

(j) Failing to properly instruct the patient on the proper use and safety with regard to his bed.

The district court concluded that those three allegations sounded in ordinary negligence and could proceed in district court.

A five-judge panel of the Third Circuit granted the hospital's supervisory writ (3-2), made it peremptory, and granted the dilatory exception as to all allegations, concluding that all fell under the LMMA. The two dissenters disagreed with the majority opinion "because the faulty equipment at issue is not intricately connected to the medical care provided by the hospital." *Id.* at p. 3-4, 959 So. 2d at 443.

The Supreme Court granted the plaintiff's writ application. Importantly, it noted that the suit was against a qualified health care provider brought to recover for an injury allegedly sustained due to a patient's contact

6

with faulty equipment. Specifically, when the plaintiff put pressure on the allegedly unlocked or defective bed, it rolled, causing him to lose his balance and fall. *Id.* at p. 8, 959 So. 2d at 446. The court then applied the *Coleman* factors.

The court stressed the first *Coleman* factor, whether the particular wrong was treatment-related or dereliction of a professional skill. Because Blevins was in the hospital for treatment of a groin infection, but the particular wrong alleged was "furnishing equipment not in proper working order," it concluded that the incident had nothing to do with the condition or treatment for which he was hospitalized.

The court also concluded that no medical expert testimony would be needed to determine if the bed was defective or whether failing to lock the bed for a hospital patient is negligent or to determine the proper maintenance procedures regarding the bed. Hence, the court concluded that the second factor sounded in general negligence, not medical malpractice.

Under factor three, whether the act or omission involved assessment of the patient's condition, the court concluded that keeping a hospital bed at its lowest position or locking the wheels, or instruction as to safety, did not require a medical assessment of the patient's condition by a hospital employee, especially since the failure to provide proper working equipment or instruct the patient had nothing to do with the groin infection for which the plaintiff was hospitalized.

The court in *Blevins* went on to conclude that the remaining three *Coleman* factors favored the plaintiff's argument that the claim was not covered by the Act. The incident did not occur in the context of a physician-patient relationship or within the scope of activities which a hospital is

licensed to perform; any person, patient, or visitor not seeking treatment, who put pressure on the bed, could have suffered the injury; and, since there was no allegation of an intentional tort, the sixth *Coleman* factor did not require consideration.

The court reversed the Third Circuit's judgment and reinstated the ruling of the district court allowing the three general negligence claims to proceed in district court while the other six allegations in medical malpractice would be considered by an MRP.

After review of the circumstances of this case in light of the current jurisprudence and the *Coleman* factors, we find that the facts of *Blevins* are easily distinguished from the instant case.

The *Blevins* court found that the all-important first *Coleman* factor, whether the particular wrong is treatment related or caused by a dereliction of professional skill, clearly favored the plaintiff for the reasons already discussed, but particularly because Blevins was not being loaded, unloaded, or transported to or from medical treatment when the incident occurred.

By contrast, in this case, Jackson was being transported on a gurney or stretcher by hospital staff from the emergency room to a hospital bed following treatment and CT and MRI tests by medical professionals and it was determined that he was stable enough to be moved to a room.

Regarding Ms. Jackson's attempt to phrase her claim in terms of general negligence and/or premises liability with respect to the gurney and the elevator, this case is more analogous to *Dupuy v. NMC Operating Co.*, 15-1754 (La. 3/15/16), 187 So. 3d 436. In *Dupuy*, a patient sustained a post-operative bone infection, osteomyelitis, following spine surgery. He and his wife filed a petition against the hospital, alleging, *inter alia*, that the hospital

8

failed to properly maintain and service equipment, including the washers and sterilizers used to sterilize the equipment used in plaintiff's surgery.

The issue before the court, then, was whether the allegation of failure to maintain and service sterilization equipment falls within the LMMA. The court analyzed the question using the *Coleman* factors. It distinguished *Blevins*, *supra*, where the injury sustained by the plaintiff from the defective bed was not related to the treatment for which he was hospitalized. It concluded that proper sterilization of the instruments was at the very core of the "treatment," back surgery, for which Dupuy was hospitalized.

After reaching the same conclusion that the other relevant *Coleman* factors favored the hospital, the court held that the allegation that the hospital failed to properly maintain and service equipment utilized in the sterilization of surgical instruments for treatment of a patient falls within the LMMA and must be submitted for review by an MRP before suit may be filed.

Numerous cases have held that incidents similar to the instant case constituted medical malpractice claims:

In *Matherne v. Jefferson Parish Hosp. Dist. No. 1*, *supra*, a patient and her husband sued the hospital in district court for damages after the patient fell while being transported by a hospital employee to her hospital room. The court sustained the hospital's exception of prematurity stating that the claim sounded in medical malpractice and must be presented to a medical review panel.

In *Andrews v. Our Lady of the Lake Ascension Comty. Hosp. Inc.,* 2013-1237 (La. App. 1 Cir. 12/18/14), 142 So. 3d 36, hospital staff allegedly dropped a patient while moving her from a bed to a wheelchair. The petition

also alleged that the bed or the wheelchair or both were defective. The trial court sustained the hospital's exception of prematurity, noting that the fact that plaintiff may have made allegations sounding in both medical malpractice and general tort law does not remove her petition from the penumbra of the LMMA if a claim for medical malpractice is stated. *Id.* at p. 3-4, 142 So. 3d at 38.

In *Richard v. Louisiana Extended Care Ctrs. Inc.*, 02-0978 (La. 1/14/03), 835 So. 2d 460, a 92-year-old double amputee fell from her wheelchair while being transported by nursing home staff. The Louisiana Supreme Court found that plaintiff's allegations involved the negligent handling, including loading and unloading, of a patient. *Id.* at p.12, 835 So. 2d at 468.

Finally, in *Cashio v. Baton Rouge Gen'l Hosp.*, 378 So. 2d 182 (La. App. 1 Cir. 1979), the First Circuit rejected the plaintiff's argument that he was suing the hospital as a premises owner rather than a healthcare provider to avoid the LMMA. The court noted that a plaintiff cannot control the progress and procedure of his claim by semantically designating one capacity out of two or more capacities of the defendant when the statute requires an MRP procedure if the claim fits within its definition. *Id.* at 185. The court concluded that the plaintiff's claim could reasonably be said to fall under the LMMA and should be handled by its procedure, "even though there may be alternative theories for liability." *Id.*

In light of these cases, we conclude that Ms. Jackson's claim arose out of the transport of her husband from medical treatment to his hospital room and is therefore "treatment related" within the meaning of the LMMA and the first factor of *Coleman*.

10

Further, under *Coleman* factor number two, whether expert testimony is required, such testimony would be necessary here. Clearly no expert is required to testify whether a gurney has a broken wheel, or whether, as Ms. Jackson now alleges, the elevator floor was not even with the lobby floor. On the other hand, hospitals have protocols regarding transporting patients that include an assessment by medical staff whether the side rails of a gurney should be raised to keep the patient from rolling off, or whether the patient was assessed to determine if restraints should have been used. These important factors require expert testimony to explain the protocols and assessments.

The hospital staff's decision to transport Jackson on a gurney to a hospital room, with or without restraints, necessarily involved an assessment of his condition, the third *Coleman* factor, and indicates this claim should be reviewed under the LMMA.

The fourth *Coleman* factor asks whether the incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform. Although the incident did not occur in the context of a physician-patient relationship, it did occur within the scope of activities which a hospital is licensed to perform. Willis-Knighton is the major hospital in the Shreveport area and it admits patients to its emergency room for medical treatment. Part of that treatment involves a medical determination of whether a patient should be admitted to a hospital room for further treatment, which necessarily requires transporting, loading, and unloading the patient. In this case, Jackson was admitted to the hospital for treatment through the emergency room; the incident occurred while he was being transported to his hospital room, a necessary part of

11

licensed medical treatment. We find that factor four of *Coleman* has been met.

The fifth factor of *Coleman* requires a determination whether the injury Jackson suffered would have occurred if he had not sought medical treatment. Since the injury occurred during his treatment, or was "treatment related" as he was being transported to his hospital room for further care after treatment and tests in the emergency room, we conclude that the injury would not have occurred if Jackson had not sought treatment.

We further find that the sixth factor of *Coleman* does not apply in this case. Although the petition alleged that the hospital staff transporting Jackson "dumped" him on the floor, this allegation does not appear to be referring to any intentional act on the part of the hospital employees.

After review of the jurisprudence and application of the *Coleman* factors to the allegations of this petition, we conclude that the claims fall within the purview of the LMMA. We therefore affirm the judgment of the trial court sustaining the dilatory exception of prematurity.

Finally, we consider the three assignments raised by Ms. Jackson.

In her first assignment, she complains that she first filed a complaint requesting an MRP before filing suit in district court. Indeed this was accomplished, nine days before suit was filed. However, any complaint so filed must also be reviewed by the panel before suit may be filed. La. R.S. 40:1231.8 B(1)(a)(i). We note that this review procedure is required in all medical malpractice cases unless the use of the MRP is waived by agreement of all parties pursuant to La. R.S. 40:1231.8 B(1)(a)(ii)(c). There has been no such agreement by the parties in this case. This assignment is without merit.

12

In her second assignment, she appears to claim that Willis-Knighton changed or altered a court order setting a hearing on the exception from 15 days to 9 days. The transcript of the March 15, 2021, hearing shows that the trial court gave her 15 days to amend her petition; she received an additional 15 days thereafter; and a hearing was set by the court for June 28, 2021. This assignment is without merit.

In her third assignment, she contends that Willis-Knighton "defaulted" by failing to file an answer to her "amended petition from medical malpractice to premise liability." Neither this issue, nor any objection, was raised at the trial court; accordingly, there is no judgment or ruling subject to review. This assignment is without merit.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court granting Willis Knighton's dilatory exception of prematurity and dismissing Ms. Jackson's petition and amended petitions without prejudice is affirmed. All costs are to be paid by Shawanda Evans Jackson.

**AFFIRMED.**

13