**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2023 CA 0200

ELIZABETH VILLANUEVA AND HUGO VILLANUEVA

VERSUS

AVALA OPERATIONS, LLC, AVALA PHYSICIANS NETWORK, LLC, FAIRWAY MEDICAL CENTER, LLC, RACHAEL HOLLINGSHEAD, AND JANE DOE

*DATE OF JUDGMENT:* **SEP 15 2023**

ON APPEAL FROM THE TWENTY-SECOND JUDICIAL DISTRICT COURT, PARISH OF ST. TAMMANY, STATE OF LOUISIANA NUMBER 2022-11398, DIVISION B,

HONORABLE AUGUST J. HAND, JUDGE

\* \* \* \* \* \*

| | |
|---|---|
| C. Barrett Rice<br>Jennifer David Khouri<br>Aaron Broussard<br>Metairie, Louisiana | Counsel for Plaintiffs-Appellants<br>Elizabeth Villanueva and Hugo<br>Villanueva |
| Guice Anthony Giambrone, III<br>A. Rebecca Wilmore<br>Metairie, Louisiana | Counsel for Defendants-Appellees<br>Avala Operations, LLC, Avala<br>Physicians Network, LLC, Fairway<br>Medical Center, LLC, and Rachael<br>Hollingshead |

\* \* \* \* \* \*

BEFORE: GUIDRY, C.J., CHUTZ, AND LANIER, JJ.

Disposition: **AFFIRMED.**

**CHUTZ, J.**

Plaintiffs-appellants, Elizabeth and Hugo Villanueva, appeal the trial court's grant of an exception raising the objection of prematurity filed by the defendants/appellees, AVALA Operations, LLC, AVALA Physicians Network, LLC, Fairway Medical Center, LLC, d/b/a AVALA or AVALA Hospital (these three entities collectively referred to hereinafter as "AVALA"), Rachael Hollingshead, and Jane Doe. This exception was raised in response to plaintiffs' petition that seeks to recover damages for injuries allegedly sustained by Mrs. Villanueva when Hollingshead, a nurse working for AVALA, assisted Mrs. Villanueva by "grab[bing]" her knees and "roughly rotat[ing] and push[ing] her legs" into her personal vehicle at the time of her discharge from the AVALA facility following a surgical procedure.[1] The issue is whether plaintiffs' claims constitute an action based in malpractice under the Medical Malpractice Act, La. R.S. 40:1231.1 *et seq.* ("the MMA"). Because we find plaintiffs' allegations describe an "unintentional tort ... based on health care or professional services rendered ... by a health care provider, to a patient, including ... the handling of a patient, including loading ... of a patient," these allegations are based in "malpractice" as defined in La. R.S. 40:1231.1(A)(13). Thus, plaintiffs are initially required to submit their claims to a medical review panel before proceeding with a tort suit. We affirm.

## FACTUAL ALLEGATIONS

According to the petition, Mrs. Villanueva underwent a left hip replacement at AVALA on May 21, 2021. Following surgery, Mrs. Villanueva recovered at AVALA until her discharge the next day. Mrs. Villanueva contends she was the last discharge of the day, and "it was clear that the nurse in charge of her

---

[1] The petition seeks to recover damages for Mrs. Villanueva's pain and suffering, mental anguish, loss of enjoyment of life, and related medical expenses. Mr. Villanueva seeks damages for loss of consortium.

2

discharge, [Hollingshead], was eager for her to depart the facility so that the AVALA personnel could leave for the day." Mr. Villanueva had driven his "personal, private vehicle" to pick up Mrs. Villanueva "at the front of the facility upon her discharge in order to transport her from [AVALA] to their home ...." Specifically, the petition further described the alleged injury-causing event as follows:

7.

In order to enter the personal vehicle, [Mrs. Villanueva] sat down backwards onto the passenger front seat of the car. Because of her recent operation, however, she had difficulty scooting back into her seat so she could move her legs fully into her ... vehicle.

8.

Annoyed by the time it was taking for [Mrs. Villanueva] to maneuver into her ... vehicle, and in a rush to get her off [AVALA's] premises so that she and the other staff could go home, [Hollingshead], and/or Jane Doe, grabbed [Mrs. Villanueva's] knees and roughly rotated and pushed her legs into the ... car.

9.

When [Mrs. Villanueva's] legs were roughly rotated and pushed into the vehicle, she heard a pop and immediately experienced increased pain in her left hip. She yelled and expressed that she had heard something "pop" and that she was in increased, severe pain, but [Hollingshead], and/or Jane Doe, dismissed her concerns. The "pop" and increased pain experienced by [Mrs. Villanueva] was in fact, later confirmed to be a dislocation of her left hip.

. . .

12.

At all relevant times ... Hollingshead and/or Jane Doe was working within the course and scope of her employment with [AVALA].

The petition further alleged that when Mrs. Villanueva arrived home, she was in excruciating pain and unable to walk. Emergency services were called, and she was transported to St. Tammany Parish Hospital, where it was discovered that she had experienced an anterior hip dislocation. She underwent surgery to reset

3

her hip, necessitating a three-night stay in the hospital and additional treatment and rehabilitation.

The plaintiffs additionally alleged that defendants were negligent by "[e]xercising unreasonable force and roughly rotating and pushing [Mrs. Villanueva] into her personal vehicle while disregarding [her] yells, expressions of pain, and feeling of dislocation"; and in failing to keep a proper lookout and to exercise caution that any average person in a similar situation would have exercised to prevent the dislocation. Plaintiffs asserted defendants are liable for: 1) failing to provide, implement, and enforce administrative policies and procedures for the discharge of patients into their personal vehicles; 2) failing to adequately train and supervise their employees, Hollingshead and/or Jane Doe; 3) failing to keep "due and proper lookout over the area where individuals are picked up by their private, personal vehicles after discharge"; 4) acting in a negligent, grossly negligent, inattentive or reckless manner; and 5) other acts and omissions.

Defendants responded by filing a dilatory exception raising the objection of prematurity, urging the MMA governs the procedural mechanisms by which relief may be granted and that plaintiffs had not obtained the opinion of a properly confected medical review panel prior to filing this suit. Defendants prayed for their exception to be maintained and for plaintiffs' suit to be dismissed without prejudice.

Following a hearing, the district court sustained the exception and dismissed this suit without prejudice. Plaintiffs have appealed, urging the district court erred by sustaining the objection. Plaintiffs generally contend their claims sound in tort rather than medical malpractice. Defendants urge that because plaintiffs are alleging a claim based on "the handling ... and the loading of a patient ..., as well as a failure by AVALA to train or supervise its staff, this suit

4

falls within the scope of the MMA...." However, plaintiffs maintain, "[T]he reckless rotating and pushing of Mrs. Villanueva into her private vehicle after she was discharged from [AVALA], had exited [AVALA's] building, and was placed into the care of [Mr. Villanueva] does not constitute medical treatment as contemplated by the [MMA]."

## ANALYSIS

The dilatory exception of prematurity provided for in La. C.C.P. art. 926(1) questions whether the cause of action is ripe for judicial determination. *Garner v. Louisiana Med. Mut. Ins. Co.*, 2022-0778 (La. App. 1st Cir. 3/29/23), 364 So.3d 508, 511. Under the MMA, a medical malpractice claim against a qualified health care provider is subject to dismissal on a timely exception of prematurity if the claim has not first been reviewed by a pre-suit medical review panel. La. R.S. 40:1231.8;[2] *Garner*, 364 So.3d at 511. In such situations, an exception of prematurity neither challenges nor attempts to defeat any of the elements of the plaintiff's cause of action but instead asserts the plaintiff has failed to take some preliminary step necessary to make the controversy ripe for judicial involvement. The burden of proving prematurity is on the moving party who, in a medical malpractice case, must show entitlement to a medical review proceeding because the allegations fall within the scope of the MMA. *Id.* at p. 5. In the instant matter, it is undisputed that plaintiffs filed their lawsuit prior to the rendition of the medical review panel opinion; thus, the issue of whether the trial court correctly applied the law and whether a claim sounds in medical malpractice presents a

---

[2] Louisiana Revised Statutes 40:1231.8(A)(1)(a) provides, in pertinent part, "All malpractice claims against health care providers covered by this Part, other than claims validly agreed for submission to a lawfully binding arbitration procedure, shall be reviewed by a medical review panel established as hereinafter provided for in this Section." Under La. R.S. 40:1231.8(B)(1)(a)(i), no action against a health care provider under the MMA, or against his insurer, "may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel."

5

question of law subject to *de novo* review. *Garner*, 364 So.3d at 511; *Dutrey v. Plaquemine Manor Nursing Home*, 2012-1295 (La. App. 1st Cir. 6/17/13), 205 So.3d 934, 942.

In addition to requiring that a claim against a qualified health care provider be reviewed by a medical review panel, the MMA also affords a limit on the amount of damages. La. R.S. 40:1231.2(B)[3]; *Dupuy v. NMC Operating Co. LLC*, 2015-1754 (La. 3/15/16), 187 So.3d 436, 439. The MMA applies only to "malpractice"; all other tort liability on the part of a qualified health care provider is governed by general tort law. *Coleman v. Deno*, 2001-1517, 2001-1519, and 2001-1521 (La. 1/25/02), 813 So.2d 303, 315.[4] Because the MMA's limitations on the liability of health care providers are in derogation of the rights of tort victims, the MMA is to be strictly construed. *Dupuy*, 187 So.3d at 439. In brief, plaintiffs state, in pertinent part, "[T]he relevant question before this Court is not whether [d]efendants are qualified health care providers but whether the acts and/or

---

[3] A qualified health care provider is liable for malpractice only to the extent provided in the MMA, namely, a qualified health care provider has no liability for any amount in excess of $100,000 plus interest. La. R.S. 40:1231.2(B)(2).

[4] In *Coleman*, 813 So.2d at 315-316, the Louisiana Supreme Court set forth six factors to assist a court in determining whether certain conduct by a qualified health care provider constitutes "malpractice" as defined under the MMA:

1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill;

2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;

3) whether the pertinent act or omission involved assessment of the patient's condition;

4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform;

5) whether the injury would have occurred if the patient had not sought treatment; and

6) whether the tort alleged was intentional.

omissions alleged by [p]laintiffs constitute medical malpractice as defined under the [MMA]."[5]

Under the MMA, La. R.S. 40:1231.1(A)(13) defines "malpractice" in relevant part as:

> [A]ny unintentional tort ... based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility ... in the training or supervision of health care providers ....

"Health care" is defined as "any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement ...." La. R.S. 40:1231.1(A)(9). "Health care provider" is defined in relevant part as "a person, ... limited liability company, ... facility, or institution licensed or certified by this state to provide health care or professional services as a physician, hospital, ... [or] registered ... nurse ...." La. R.S. 40:1321.1(A)(10). "Patient" means "a natural person ... who receives or should have received health care from a licensed health care provider, under contract, expressed or implied." La. R.S. 40:1231.1(A)(15).

Here, plaintiffs concede that whether Hollingshead's conduct was intentional is not at issue; plaintiffs have alleged that Hollingshead's conduct was grossly negligent and careless. However, plaintiffs urge that for Mrs. Villanueva to qualify

---

[5] Plaintiffs do not dispute the defendants were qualified providers at the time of the alleged malpractice. See La. R.S. 40:1231.2. A certificate of enrollment issued by the State of Louisiana Patient's Compensation Fund is competent evidence to establish a *prima facie* case for the applicability of the medical malpractice law regarding claims against the party identified on the certificate. La. R.S. 13:3712; *Roark v. Liberty Healthcare Sys., LLC,* 44,913 (La. App. 2d Cir. 12/9/09), 26 So.3d 968, 973-74, *writ denied,* 2010-0390 (La. 4/23/10), 34 So.3d 265. At the hearing, the defendants introduced certified copies of various certificates of enrollment from the Louisiana Patient's Compensation fund, establishing that each AVALA defendant maintained professional liability coverage of $100,000 at the time of the alleged malpractice herein and that Hollingshead, as a registered nurse, was covered as an additional insured while acting in the course of and within the scope of her duties for AVALA.

as a "patient" under the MMA, she would have had to still be in the process of receiving "health care" when the negligence occurred and it would have had to occur during her "medical care, treatment, or confinement." Here, they urge the alleged wrong in this case is not treatment related and happened after Mrs. Villanueva "had been discharged and [had] exited the AVALA building." Plaintiffs assert the maneuvering of Mrs. Villanueva into her husband's vehicle was not within the scope of activities that defendants were to perform as part of their health care services. Further, plaintiffs urge that while the conduct complained of was committed by a registered nurse, this fact is inconsequential because the tasks performed did not require professional skill and could have been undertaken by someone without a medical license. Plaintiffs thus assert their claims fall outside of the MMA, such that they are not required to submit their claims to a medical review panel.

To support their position, plaintiffs rely, in part, on *Hidalgo v. Wilson Certified Express, Inc.*, 94-1322 (La. App. 1st Cir. 5/14/96), 676 So.2d 114, and *Boudreaux v. Nat'l Union Fire Ins. Co.*, 2020-0979 and 2020-1034 (La. App. 1st Cir. 12/7/20), 2020 WL 7213510, wherein this court found the plaintiffs' claims were not subject to the MMA. Further, plaintiffs attempt to distinguish their allegations from those presented in *Andrews v. Our Lady of the Lake Ascension Community Hosp., Inc.*, 2013-1237 (La. App. 1st Cir. 2/18/14), 142 So.3d 36, wherein this court held that the plaintiffs' action was subject to the MMA.

In *Hidalgo*, plaintiffs, husband and wife, were involved in a vehicle collision, which necessitated that the wife be taken by ambulance to a hospital for treatment of injuries she sustained. While in route to the hospital, the ambulance rear-ended another vehicle, causing the wife additional injuries. The plaintiffs later filed suit against various defendants involved in both collisions, including the

8

ambulance company and its driver, who excepted to the petition on the basis of prematurity. *Hidalgo*, 676 So.2d at 115-16. On appeal, this court affirmed the trial court's denial of the exception, finding in pertinent part as follows:

> [Plaintiffs] have not alleged that any act or omission, related to the promotion of a patient's health or to the provider's exercise of professional expertise or skill, caused or contributed to her injuries[,] ... [n]or have they alleged Acadian was negligent in loading [plaintiff-patient] into the ambulance or in failing to properly secure the stretcher or backboard, or both, once loaded into the ambulance."

*Id.* at 118.

In doing so, this court noted, "Any such allegations would be covered by the [MMA] and would have to first be brought to a medical review board before any evidence of such actions could be admitted at the trial of this case." *Id.* at n.7. However, based on the specific factual allegations presented, this court found the negligence claims against the ambulance company and driver pertained only to the ambulance driver's driving skills and that the legislature did not intend to include negligence in driving an ambulance within the scope of the MMA. *Id.* at 118-19. This court concluded that the plaintiffs' petition stated "a cause of action for ordinary negligence in driving a motor vehicle, as opposed to a breach of a duty related to the promotion of a patient's health or to the provider's exercise of professional expertise or skill." *Id.* at 119. As additional support for its conclusion, this court turned to the MMA's definition of malpractice, noting it "specifically includes the 'handling of a patient, including loading and unloading of a patient,' yet does not include any reference to transport of a patient." *Id.*[6]

In *Boudreaux*, this court granted relators' applications for supervisory writs based on a finding that the trial court had erred in sustaining the defendants'

---

[6] The court further reasoned, "The references to loading and unloading of patients in the [statutory definition of malpractice] clearly refer to activities customarily performed by ambulance attendants. By including these words, the legislature evidenced its intent to differentiate these activities from transport, although that is an activity very commonly associated with ambulances." *Id.* at 119.

exception of prematurity. **Boudreaux**, 2020-0979 and 2020-1034 at p. 1.[7] Therein, a patient, who had been discharged from a behavioral hospital, and her husband filed suit, alleging she was injured as a result of the hospital employees' actions of failing to provide a safe means of entering and exiting a transportation van while on her trip home. In her petition, plaintiff alleged that when she initially boarded the transport vehicle, "it was noted that the step stool normally used in assisting patients in entering and exiting the van was missing." Because plaintiff was unable to enter the van on her own, two employees of the behavioral hospital assisted her by lifting her onto the first step of the transport van's entrance; one employee was driving the van and the other was assisting him as a "technical support assistant." While travelling to plaintiff's home, the hospital employees decided to stop for lunch. After exiting the van and eating lunch, plaintiff attempted to re-enter the transport van "by crawling onto the first step and crawling up the stairs without success." Thereafter, the employee who had been driving the van directed plaintiff "to reposition herself on her buttocks on the ledge of the doorway with her feet dangling towards the ground." The defendant driver then allegedly got behind plaintiff and "attempted to perform a bearhug [sic] and pull her up and forward" causing injury to plaintiff. Thereafter, plaintiff filed a personal injury suit, alleging negligence by the behavioral hospital, the driver of the transport van, and the other assistant.

The defendant hospital filed an exception of prematurity, arguing plaintiffs' claims arose out of medical malpractice, rather than general tort liability, and plaintiffs' claims were required to first be reviewed by a medical review panel. Plaintiffs contended that defendants' alleged misconduct did not constitute medical

---

[7] Because a court may take judicial notice of its own proceedings, see **Horrell v. Alltmont**, 2019-0945 (La. App. 1st Cir. 7/31/20), 309 So.3d 754, 760-61 n.10, in conducting our analysis, we have reviewed the writ application filed in **Boudreaux**.

10

malpractice, because it was not treatment-related or caused by a dereliction of professional skill, and the incident did not occur in the context of a physician-patient relationship. The hospital's professional liability insurer, who intervened in this matter, also opposed the exception, asserting that plaintiffs' claims fell under general tort law because plaintiff was not a "patient" at the time of the incident, there was no "health care provider," and the alleged injuries arose after her discharge from the hospital; thus, the claims were outside the scope of the MMA. This court concluded plaintiffs' claims sounded in tort and did not fall within the provisions of the MMA. *Boudreaux*, 2020-0979 and 2020-1034 at p. 1.

In *Andrews*, 142 So. 3d at 36, this court considered the plaintiffs' appeal of the trial court's grant of an exception raising the objection of prematurity filed by the defendant/hospital in response to the tort suit filed by the patient and her husband. The plaintiff/patient had been admitted to a hospital for an apparent seizure suffered earlier that day. *Andrews*, 142 So.3d at 37. "Following treatment and at the time of her discharge" from the hospital, the plaintiff was "unconscious and/or asleep, and unable to ambulate on her own." *Id*. According to plaintiffs' allegations, the hospital staff attempted to move plaintiff/patient from her bed to a hospital wheelchair, but the "hospital staff dropped [plaintiff/patient] on the ground, causing [her] to shatter her foot and ankle." *Id*. at 37-38. In response to plaintiffs' contention that the alleged acts did not constitute "malpractice" for purposes of the MMA, this court concluded, "We ... find no ambiguity in [the MMA's definition of malpractice] and any claims involving 'handling of a patient, including loading and unloading,' are covered by the MMA and must be submitted to a medical review panel." *Id*. at 39. This court additionally found, "It is immaterial that [plaintiff] may have been discharged at the time hospital staff attempted to move her." *Id*.

11

After thorough review of plaintiffs' allegations, we find the factual scenario presented here to be more like *Andrews* than *Hidalgo* or *Boudreaux*. In the instant case, we conclude that the factual allegations fall squarely within the definition of malpractice. La. R.S. 40:1231.1(A)(13). When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. Civ. Code art. 9. We find no ambiguity in La. R.S. 40:1231.1(A)(13). Claims involving "any unintentional tort ... based on health care or professional services rendered, or which should have been rendered by a health care provider to a patient, ... and the handling of a patient, including loading and unloading of a patient," are covered by the MMA and must be submitted to a medical review panel. See *Andrews*, 142 So.3d at 39, citing former La. R.S. 40:1299.41 and *McMillian v. Westwood Manor Nursing Home, Inc.*, 2012-54 (La. App. 3d Cir. 5/30/12), 92 So.3d 623, 635, *writ denied*, 2012-1857 (La. 11/9/12), 100 So.3d 839.[8]

Here, Hollingshead, in her capacity as a registered nurse and Mrs. Villanueva's discharge nurse, was providing "health care," as defined under the MMA, as she directly assisted Mrs. Villanueva's transfer from AVALA, a health care facility, to her car. The act of facilitating Mrs. Villanueva's transfer to her car was an "act ... performed, or which should have been performed ... by any health care provider for, to, or on behalf of a patient during the patient's medical care." La. R.S. 40:1231.1(A)(9). As such, Hollingshead was rendering professional services to a patient; Hollingshead provided this service as part of the health care

---

[8] Although the *Andrews* court cited La. R.S. 40:1299.41 et seq., this section was redesignated as La. R.S. 40:1231.1 by H.C.R. No. 84 of the 2015 Regular Session.

Because we find no ambiguity in the application of La. R.S. 40:1299.41.1(A)(13) to the factual allegations of this case, we pretermit an analysis of the *Coleman* factors. However, if we were to apply the *Coleman* factors, we would reach the same result. See *Andrews*, 142 So.3d at 39 n.3.

12

administered to Mrs. Villanueva, as a result of the treatment she received at AVALA. "Malpractice" as set forth in La. R.S. 40:1231.1(A)(13) specifically includes the "loading and unloading of a patient...." In this instance, the alleged injuries occurred specifically as Hollingshead was loading Mrs. Villanueva into her vehicle so that she could leave AVALA premises. She had not yet departed from the premises as the plaintiff had in *Boudreaux*. As in *Andrews*, the alleged injury-causing event occurred on the health care provider's premises. Also as in *Andrews*, we find it insignificant that Mrs. Villanueva had either been discharged or was in the process of being discharged at the time the alleged injuries occurred, particularly in light of the fact that she remained on AVALA premises while she was being loaded into her vehicle. *Andrews*, 142 So.3d at 39. Although plaintiffs allege the "loading" could have been performed by someone other than a "health care provider," in this case it was not.

Conversely, in *Hidalgo*, the plaintiff/patient's injuries arose from the ambulance driver's driving skills and how the plaintiff/patient was transported rather than from how she was "load[ed] or unload[ed]." In *Boudreaux*, although plaintiff was being loaded off premises into a van when the alleged injuries occurred, the writ application in that case establishes that the "loading or unloading" did not involve a "health care provider."

Therefore, we find defendants have shown that plaintiffs' claims fall within the purview of the MMA, and must first be presented to a medical review panel. Thus, until such time as plaintiffs' complaints have been reviewed by a medical review panel, plaintiffs' suit is premature. Accordingly, the district court correctly sustained defendants' dilatory exception raising the objection of prematurity.

**DECREE**

For these reasons, the October 27, 2022 judgment of the district court, maintaining defendants' dilatory exception of prematurity and dismissing plaintiffs' claims without prejudice is affirmed. Appeal costs are assessed to plaintiffs, Elizabeth and Hugo Villanueva.

**AFFIRMED**.